**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Speedy Mulch LLC, *et al.*,

        Plaintiffs,

      v.                                Case No. 2:03cv651

Donald J. Gadd, *et al.*,                  Judge Michael H. Watson

        Defendants.


## OPINION AND ORDER

This matter is before the Court upon Plaintiff Daniel Speedy's Motion for Summary Judgment (Doc. 74); Defendant Village of Byesville and Donald Gadd's Motion for Summary Judgment (Doc. 75); Plaintiffs Speedy Mulch, LLC and Daniel Speedy's Motion for Summary Judgment on Counts III and IV of Plaintiffs' Amended Complaint (Doc. 77); Defendant Donald Gadd's Motion for Summary Judgment (Doc. 78); and Defendant Village of Byesville's Motion for Summary Judgment on its Counterclaim (Doc. 90).  Plaintiffs Speedy Mulch and Daniel Speedy have also filed a Motion to Strike Defendants' Response in Support of their Motion for Summary Judgment.  (Doc. 102)  These motions have been fully briefed and were the subject of oral argument on September 19, 2005.  This matter is now ripe for review.

A.  **FACTS**

Plaintiffs Speedy Mulch, LLC and Daniel Speedy bring claims for Equal

Protection violations, Due Process violations; tortious interference with business

relationship; conversion; breach of contract; and unjust enrichment.[1]

Defendant Village of Byesville has brought a counterclaim for breach of fiduciary

duty; breach of duty of good faith and fair dealing; fraud; trespass and conversion;

negligent misrepresentation; and a claim for "Dan Speedy's personal liability."

Plaintiff Speedy lives in Guernsey County, Ohio and is the executive director of

the Guernsey County Community Development Corporation ("CDC").[2]  Speedy is also

the President of Speedy Mulch, which is in the business of obtaining yard waste and

other discarded wood materials to reprocess into mulch.  Defendant Donald Gadd is the

mayor of the Village of Byesville, which is located in Guernsey County.  Plaintiffs' claims

against Gadd are in both his official and individual capacity.

This cases arises out of several disputes between Speedy and Gadd.  The first

dispute is related to land owned by John Tomek.  From June 2000 until December

2001, Speedy leased the Tomek site for his business.  (Doc. 79, Daniel Speedy Depo.

at 33, 83-84)  In the fall of 2001, Gadd and Speedy discussed Byesville purchasing the

Tomek site for a water plant project.  (Id. at 70; Donald Gadd Depo. at 157-59)  Speedy

denies that Gadd asked him to negotiate the purchase on behalf of Byesville.  Gadd

maintains that he asked Speedy to purchase all thirty acres of the Tomek site, but

---

[1]Plaintiff Speedy originally also brought a claim of intentional infliction of emotional distress, but he voluntarily dismissed this claim.  (Doc. 70)

[2]The purpose of the CDC is to sponsor economic development and entrepreneurial activities that work toward the greater economic health of Guernsey County and its communities.  (Doc. 74, Ex. B)

Speedy told him that Tomek was interested in selling only twenty acres.  (Doc. 79, Gadd Depo. at 159, 162-63)  Speedy maintains that Gadd was only interested in twenty acres.  (Speedy Depo. at 79)  Byesville entered into a purchase option agreement with Tomek to purchase twenty acres.  (Doc. 75, Ex. A)   While the option was pending, Speedy released his lease as to the twenty acres to allow Byesville to purchase the land unencumbered.  (Speedy Depo. at 92-94, 202-203; Doc. 75, Ex. C)  Later that same day, Speedy entered into another lease for the Tomek site.  (Id. at 201, 204)  The lease states that the leased premises "shall be used for the purpose of staging logs, mulching of wood debris and composting of said debris."  (Doc. 75, Ex. D)  The lease states that it:

> . . . encompasses all of the 30 acres owned by Mr. Tomek at this time. However, it is agreed that those premises used for Lease purposes shall not interfere with The Village of Byesville's future construction of their water plant, once they purchase the property in question, unless issues are encountered between the Village and Speedy Mulch.  . . .

(Id.)  Speedy admits that he did not notify Byesville of this lease.  (Speedy Depo. at 214)

Defendants maintain that after Byesville purchased the land, Speedy entered the Tomek site and began timbering trees without Byesville's permission.  Speedy denies these allegations.  (Id. at 179)  Byesville posted "no trespassing" signs on the property.  (Gadd Depo. at 232-33)  Speedy maintains that the signs were erected to prevent him from entering the property to retrieve equipment and mulch piles from the land.  (Speedy Depo. at 111-15, 118-125)  Defendants deny these allegations, and point to a letter from Byesville to Speedy authorizing him to enter the property.  (Id. at 112)  Speedy acknowledges that he was able to remove his equipment, but claims that he was not allowed to remove mulch that remained on the site.  (Id. at 121-22, 126)

Speedy states Richard Rauch, the Byesville administrator, told Speedy that he would have to get permission to give Speedy authorization to remove "any wood material." (Id. 113)  Defendants maintain that Speedy abandoned the mulch.  Defendants point to a letter Speedy's attorney wrote to Defendants informing them that the Tomek property had been purchased "as is," and suggesting that the wood and debris left on the property be converted to mulch to defray the cost of cleanup of the site.  (Doc. 75, Ex. G)

The second dispute is based on the contract between Speedy Mulch and Byesville for the mulching of yard wastes and tree trimmings for Byesville residents. According to the contract, no for-profit entities were permitted to dump on the Speedy Mulch site.  (Gadd Depo., Ex. 6)  Nevertheless, Gadd authorized a for-profit tree trimming business to dump debris on the site.  (Gadd Depo. at 185-86)

The third dispute is regarding Speedy's First Amendment rights.  Speedy alleges that he voiced opposition to Gadd's policies and actions, and when he attempted to speak at a Byesville public meeting, Gadd would "shut him up" by telling him that he did not "want to hear it."  (Doc. 71, Tipple Depo. 36-37)  Speedy also alleges that Gadd retaliated against him for supporting an opposing candidate for the office of mayor.

The fourth dispute is related to a criminal investigation of Speedy.  Speedy alleges that in 2001, Gadd asked him to prepare a feasibility grant for a golf course. Speedy refused because he believed that Gadd's personal investment in the project created a conflict of interest.  Speedy alleges that Gadd retaliated in 2003 by instructing the Byesville Solicitor to contact the Ohio Attorney General's Bureau of Criminal Investigations ("BCI") to investigate Speedy's conduct regarding the golf course.  The

BCI did not find any criminal violations and closed its investigation.  Gadd has testified that there were two Byesville volunteer fire chiefs and one paid police officer who were involved in criminal acts, but Defendants did not pursue criminal charges against them. (Gadd Depo. at 13-15)  Instead, these employees were asked to resign.  (Id.)

## B.  ARGUMENTS OF THE PARTIES

### 1.  Plaintiffs' Motion for Summary Judgment on Defendant Byesville's Counterclaim

Plaintiffs[3] move for summary judgment based on Byesville's counterclaim being unauthorized.  Plaintiffs argue that the Byesville Village council neither approved nor ratified the counterclaim, as required by Ohio law.  Plaintiffs argue that Byesville lacks standing to sue Speedy for acts involving the CDC because as a mere beneficiary, Byesville cannot sue the individual officers for corporate wrongdoing.  Plaintiffs also argue that as an officer of a nonprofit corporation, he is immune from liability.  Finally, Plaintiffs argue that there are irrefutable facts contained in the record which prove that the allegations in the counterclaim are false.

### 2.  Defendants' Motion for Summary Judgment

Defendants Byesville and Gadd argue that they are not liable under section 1983 because Plaintiffs have failed to identify a policy which deprived him of their constitutional rights; and Plaintiffs cannot prove that Gadd encouraged a specific incident of misconduct or otherwise participated in the misconduct while acting under color of state law.  Defendants argue that even if Plaintiffs can show an official policy,

---

[3]The Motion for Summary Judgment is incorrectly brought by both Plaintiffs.  Byesville's counterclaim is only brought against Speedy and not against Speedy Mulch.

Plaintiffs cannot show that they are members of a suspect class for the equal protection claim; Defendants were justified in their actions and therefore not liable for tortious interference with business relations; and Defendants cannot be liable for conversion because it was reasonable for Byesville to believe Plaintiffs abandoned any personal property left on the Tomek site. Defendants argue that Plaintiffs' breach of contract claim must fail because Plaintiffs have failed to assert a legally cognizable injury, and the allegations are based on a nonexistent contract.

### 3. Plaintiffs' Motion for Summary Judgment on Counts III and VII of Plaintiffs' Amended Complaint

Plaintiffs state that Gadd has admitted that permitting a private tree-trimming business to dump debris on the Speedy Mulch site was a breach of the contract between Byesville and Speedy Mulch. Speedy argues that Gadd violated his constitutional rights by using his office to pursue a lawsuit against Speedy in a matter that was purely a personal business matter; and by using the Village's own solicitor to pursue Speedy criminally over a personal business matter.

### 4. Defendant Gadd's Motion for Summary Judgment

Mayor Gadd argues that he is entitled to qualified immunity because Plaintiffs have not shown a deprivation of a constitutional right.

### 5. Defendant Byesville's Motion for Summary Judgment

Byesville argues that it had standing to bring the counterclaims because Ohio Revised Code does not require a council resolution to file suit; and the counterclaims were authorized by Byesville's Solicitor and Solicitor *Pro Tem*. Byesville argues that even if the counterclaims were not authorized, judicial economy is served by allowing

them to proceed because the Council could simply authorize the claims and they would be refiled.  Byesville argues for piercing the corporate veil because Speedy failed to observe corporate formalities.  Byesville also argues that Speedy violated his fiduciary duty by failing to engage in good faith and fair dealing, committing fraud, and negligently misrepresenting information material to Byesville's business deals.  Byesville also states that Speedy trespassed Byesville's property by taking trees from its property.

### 6.  Plaintiffs' Motion to Strike

Plaintiffs have filed a Motion to Strike Byesville's Response in Support of their Motion for Summary Judgment (Doc. 101) as an impermissible surreply.  In the alternative, Plaintiffs seek leave to file a response to the Motion.

## III.  ANALYSIS

### 1.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-480 (6th Cir. 1989).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587.

> **2.** **Plaintiffs' Motion to Strike Defendants' Response in Support of their Motion for Summary Judgment (Doc. 102)**

This Court permitted Defendants to file their Motion for Summary Judgment after the deadline for dispositive motions had passed.  (Doc. 103)  Therefore, Defendants' Response in Support was properly filed, and the Court DENIES Plaintiffs' Motion to Strike.  Furthermore, because the Court finds that this matter has been fully briefed and argued, the Court DENIES Plaintiffs' Motion to the extent that it seeks leave to file a response to Defendants' Motion.[4]

> **3.** **Plaintiffs' Constitutional Claims**

In their Amended Complaint, Plaintiffs allege that Defendants retaliated against them in response to Speedy's exercise of his First Amendment right to free speech. (Doc. 34, ¶ 38)  Plaintiffs allege that Defendants' retaliation was in the form of the taking of Plaintiffs' personal and real property by way of threats of a lawsuit.  (Id.)  Plaintiffs also allege that Defendants have taken Plaintiffs' property and access to the Tomek site without due process in violation of the Fourteenth Amendment.  (Id. ¶ 42)  In addition, Plaintiffs bring a section 1983 claim against Gadd in his individual capacity for Equal Protection violations.  (Id. ¶ 47)[5]  In their Response in Opposition to Defendants' Motion

---

[4]The Court notes that Speedy's Motion for Summary Judgment on Byesville's Counterclaim is forty-six pages long and Byesville's Response in Opposition and Motion is thirty-five pages long.  Neither party sought leave to file memoranda in excess of the page limitation found in S.D. Ohio Civ. R. 7.2(a)(3). Moreover, the Court held oral argument on all of the motions.  (See Doc. 110)

[5]All other claims have been brought against Gadd in his official capacity, which the Court construes as claims against the Village of Byesville.  *Accord Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) ("[A] section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself.").

for Summary Judgment, Plaintiffs add that Defendants improperly subjected Speedy to a criminal proceeding in violation of the Fourth Amendment, and Defendants' filing of their counterclaim in this case violated Plaintiffs' equal protection rights.  (Doc. 89)[6]

Plaintiffs argue that they are entitled to summary judgment on their Equal Protection claim against Gadd in his individual capacity.  Defendants argue that they are entitled to summary judgment on all of Plaintiffs' constitutional claims.

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Therefore, a plaintiff must allege two elements to establish a *prima facie* case under section 1983: (1) that the action occurred "under color of law;" and (2) that the action was a deprivation of a constitutional right or a federal statutory right.  *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).

### a.    *Municipal liability*

For section 1983 liability to attach to a municipality, a plaintiff must offer proof of a wrongful or injurious policy or custom on the part of the city and a causal link between the policy or custom and the constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378, 385-86 (1989).  A municipality cannot be sued on a *respondeat superior* basis.  *Monell v. Department of Social Servs*., 436 U.S. 658, 691 (1978).  Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83

---

[6]Even though these claims were not properly plead, the Court will address Plaintiffs' arguments in support of these claims.

(1986).  As the Supreme Court has explained:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official--even a policymaking official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Id.* at 481-483 (citation omitted).  Whether a given individual is such a "policymaker" for purposes of section 1983 liability is a question of state law.  *Id.* at 483.

By state statute, the mayor of a village holds executive power, and is "the chief conservator of the peace therein and shall have the powers and duties provided by law." Ohio Rev. Code §§ 733.23, 733.24.  There appears to be no dispute between the parties that Gadd was a policymaker.

Plaintiffs argue that municipal liability can be based upon the policy "to find any reason to arrest and/or charge Speedy with a crime" and that this policy was "known to all members of the Byesville Police Department."  (Doc. 89)  As evidence of this policy, Plaintiffs cite to a deposition of Edward Pierce, which is not in the record.  Plaintiffs also state that Byesville is "run as Gadd's personal kingdom," and "Byesville is subject to unethical behavior and coercion by Gadd."

As this Court has explained: "To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient."  *Games Galore of Ohio, Inc. v. Masminster*, 154 F.Supp.2d 1292, 1300 (S.D.Ohio 2001), *citing*, *Taylor v. Canton Police Dep't*, 544 F.Supp. 783 (N.D.Ohio 1982).  Plaintiffs have failed to adduce specific facts to support their claims.  Moreover, there is no causal link between the policies which Plaintiffs have identified and the

constitutional deprivations alleged by Plaintiffs.

Furthermore, even through there is no dispute that Gadd was a policymaking official, his "discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  Plaintiffs have not shown that Gadd was responsible for establishing final government policy with respect to the actions ordered.

However, even if the Court were to find that a policy or custom existed, Plaintiffs claims against Defendants fail because they have failed to show a constitutional deprivation.

### 1.    Equal Protection

Plaintiffs allege that both Defendants violated their right to equal protection when Defendants took their property and threatened to sue Plaintiffs if they did not leave the premises.  Plaintiffs also allege that Gadd violated their right to equal protection by pursuing a criminal proceeding against Speedy.

Plaintiffs allege a "class of one" equal protection claim, that is, Plaintiffs allege that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005), *quoting*, *Klimik v. Kent County Sheriff's Dept.*, 2004 WL 193168 (6th Cir. 2004) (unpublished).

Plaintiffs' allegations regarding the Tomek site cannot support an equal protection claim. Plaintiffs have not identified any other person or corporation who is similarly situated to themselves.

Similarly, Plaintiffs' argument that Defendants' counterclaim in this proceeding violates Plaintiffs' equal protection rights lacks merit. Plaintiffs have not identified any other similarly-situated person or corporation. In addition, the Court does not accept Plaintiffs' argument that Defendants have violated Ohio law, and therefore lack a rational basis for bringing the counterclaim. Plaintiffs argue that Ohio law requires the Byesville Village council to approve or ratify the counterclaim. Plaintiffs cite to Ohio Revised Code § 733.53 which provides:

> The city director of law, when required to do so by resolution of the legislative authority of the city, shall prosecute or defend on behalf of the city, all complaints, suits, and controversies in which the city is a party, and such other suits, matters, and controversies as he is, by resolution or ordinance, directed to prosecute. He shall not be required to prosecute any action before the mayor of the city for the violation of an ordinance without first advising such action.

The Court finds that there is nothing in this statute which would prohibit the filing of suit without the authorization of the city's council. This statute merely states that *when* a law director is required to do so, he or she shall prosecute or defend on behalf of the city. Plaintiffs have not presented any evidence, such as the Village of Byesville's

charter, which would indicate that Byesville's law director is required to prosecute or defend on behalf of the village.

In support of their claim based on the criminal investigation of Speedy, Plaintiffs argue that there were two Byesville volunteer fire chiefs and one police officer who were involved in criminal acts, but Defendants did not pursue criminal charges against them. However, Plaintiffs do not explain how these volunteer and paid employees are similarly situated to Speedy.[7]  Speedy was not an employee of Byesville, but was the executive director of the CDC.  The Byesville employees were asked to resign, while Speedy remained in his position.  Moreover, Plaintiffs have not presented any evidence regarding the nature of the criminal acts of these employees, how Defendants became aware of the criminal acts, and whether a criminal investigation of these employees was necessary under the circumstances.

Finally, while Defendants may have contacted the BCI and provided the BCI with information, the decision to conduct the investigation was that of the BCI, who is not a party to this action.   Therefore, Plaintiffs cannot show the investigation was motivated by animus or ill-will of the Defendants.  Furthermore, Plaintiffs have not argued that there was no basis for the investigation.  As a result, Plaintiffs have not shown that Defendants' actions lack a rational basis.  *Accord Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1245 (6th Cir. 1989) ("Investigation, without more, simply does not rise to the level of a constitutional violation cognizable under 42 U.S.C. § 1983.")

---

[7]In analyzing the elements of a claim of selective prosecution, the Sixth Circuit has stated that "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998), *citing, United States v. Armstrong*, 517 U.S. 456, 465 (1996).

Because Plaintiffs have not sufficiently alleged a violation of their right to equal protection, Defendants are entitled to summary judgment on this claim.

### 2.    Fourth Amendment

Plaintiffs also argue that the commencement of the investigation against Speedy is grounds for a malicious prosecution claim.[8]  The Sixth Circuit has explained that although it "has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.' " *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003), *quoting*, *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001).

Plaintiffs have not shown a lack of probable cause for the investigation.  Without such evidence, Plaintiffs are unable to maintain a claim under the Fourth Amendment.  Therefore, Defendants are entitled to summary judgment on this claim.

### 3.    Due Process

The Due Process Clause prohibits any state from depriving a person of "life, liberty, or property, without due process of law. . ."  U.S. CONST. amend. XIV § 1.

To establish a procedural due process violation, a plaintiff must prove that he or she was deprived of a property or liberty interest by a party acting under color of state law without some sort of hearing.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).  However, as the Supreme Court has explained:

---

[8]In their Response in Opposition, Plaintiffs discuss their malicious prosecution claim in terms of a tort under Ohio law.  However, as the Sixth Circuit has explained, the "Fourth Amendment is the only 'peg' on which to hang a § 1983 claim alleging malicious prosecution," and it is not proper to rely on the state law of malicious prosecution to define the proper cause of action for a federal malicious prosecution claim under section 1983.  *Darrah v. City of Oak Park*, 255 F.3d 301, 311-12 (6th Cir. 2001), *quoting*, *Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  When protected interests are implicated, the right to some kind of prior hearing is paramount.  But the range of interests protected by procedural due process is not infinite.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570 (1972).

"Property interests are not created by the Constitution, 'they are created and dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . "  470 U.S. at 538, *quoting*, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Plaintiffs claim that Defendants took Plaintiffs' materials and equipment; and cancelled their tenancy rights in the Tomek site.

Defendants do not dispute that Plaintiffs had protected property interests in the materials and equipment.  Instead, Defendants argue that Plaintiffs were provided with the process they were due.  Defendants maintain that Plaintiffs had the opportunity to remove their personal property from the site, and did in fact remove some of the property from the site.  Speedy has admitted that he was permitted to remove his equipment from the property, but claims that he was not allowed to remove mulch from the site.  Defendants claim that Speedy abandoned the mulch.

Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing.  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 709 (6th Cir. 2005), *citing*, *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  In the Sixth Circuit, a section 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized

act" and that available state remedies would not adequately compensate for the loss. *Macene v. MJW, Inc*., 951 F.2d 700, 706 (6th Cir. 1991).  Here, Plaintiffs do not allege that their loss of property was the result of an established state procedure.  Therefore, their claim falls into the second category.

When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate "the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).  Therefore, a section 1983 plaintiff alleging the deprivation of property without the due process of law must plead and prove "the inadequacy of state processes, including state damage remedies to redress the claimed wrong."  *Mitchell v. Fankhauser*, 375 F.3d 477, 482 (6th Cir. 2004), *citing*, *Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983).  Plaintiffs have not plead or proven that Ohio does not provide an adequate remedy.  Therefore, Plaintiffs cannot maintain their due process claim based on their loss of materials or equipment.

Defendants do not address whether Plaintiffs had a property interest in the second lease between Tomek and Plaintiffs.  Plaintiffs argue that even though Byesville purchased some of the property, it was still subject to the lease.  Even if the Court would find that Plaintiffs have articulated a protected property interest in the lease, Plaintiffs have not plead or proven that the state processes are inadequate.

Because Plaintiffs have failed to establish a violation of procedural due process, Defendants are entitled to summary judgment on this claim.

### 4.     Freedom of Speech

Plaintiffs' claim based on the freedom of speech is rather difficult to discern.  In the Amended Complaint, Plaintiffs couch their claim in terms of an Equal Protection violation.  Equal protection claims may be brought where the government discriminates among people based on the exercise of a fundamental right.  *See e.g., Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942) (holding the right to procreate is a fundamental right, the outright denial of which violates the Equal Protection Clause).  Therefore, claims that a citizen has been prohibited from speaking because of his or her membership in a class have been brought under both the First Amendment and the Fourteenth Amendment. *See e.g., Police Dept. of the City of Chicago v. Mosley,* 408 U.S. 92 (1972) (invoking Equal Protection Clause in striking down an ordinance which impinged upon the fundamental right to picket); *see also Pesek v. City of Brunswick*, 794 F.Supp. 768, 783 n.6 (N.D.Ohio 1992) (collecting cases).

However, in arguing the motions for summary judgment, Plaintiffs treat their claims as being claims of retaliation based on Plaintiffs' exercise of their freedom of speech.  Plaintiffs allege that Gadd prevented Speedy from speaking at a Byesville public meeting in retaliation for his opposition to Gadd's policies and actions.  Speedy also alleges that Gadd retaliated against him for supporting an opposing candidate for the office of mayor.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was

motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiffs have identified protected conduct: criticizing a public official, speaking at a public meeting, and supporting a candidate. The freedom to criticize public officials is a First Amendment right. *See Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("[C]riticism of the government is at the very center of the constitutionally protected area of free discussion.") The First Amendment also protects the right to speak in a public forum to the extent that individuals cannot be excluded from a public forum based on the content of the individuals' speech alone. *Mosley*, 408 U.S. at 96.[9] Finally, speech regarding political candidates is at the core of the protection afforded by the First Amendment. *See McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 346 (1995).

However, Plaintiffs have not alleged or proven that Defendants took adverse action that would deter a person of ordinary firmness from continuing to engage in constitutionally protected conduct. The Sixth Circuit has recognized that in a retaliation case, the effect on freedom of speech need not be great in order to be actionable. *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005), *citing*, *Thaddeus-X*, 175 F.3d at 397. Nevertheless,"since §1983 is a tort statute, real injury must be involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Id.* Plaintiffs allege that Defendants retaliated against them by taking Plaintiffs' personal and real property by

---

[9]However, as this Court has recognized: "content-neutral restrictions on matters such as the time and manner of speech may be imposed at public meetings, to enable public bodies to conduct the business of government without undue interruption or distraction." *Princeton Ed. Ass'n v. Princeton Bd. of Ed.*, 480 F.Supp. 962, 969 (S.D.Ohio 1979).

way of threats of a lawsuit, but there is no allegation or proof that Plaintiffs were deterred from speaking.

Moreover, there is no evidence in the record of a causal connection between Plaintiffs' protected activity and Defendants' actions. As such, Plaintiffs cannot maintain their claim based on the freedom of speech, and Defendants are entitled to summary judgment on this claim.

### b.    Qualified immunity

Qualified immunity will generally shield government officials from individual liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing*, *Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved " 'clearly established constitutional rights of which a reasonable person would have known.' "

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002), *quoting*, *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

While a defendant bears the burden of pleading the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002), *citing*, *Rich v. City of Mayfield*

*Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The ultimate burden of proof is on the

plaintiff to show that the defendant is not entitled to qualified immunity. *Id.*, *citing*,

*Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Based on the analysis above, Plaintiffs are unable to show that a constitutional

violation occurred. Accordingly, Defendant Gadd is entitled to qualified immunity on

Plaintiffs' constitutional claims.

### 4. Plaintiffs' and Byesville's State law claims.

In light of the Court's ruling on Plaintiffs' federal claims, the Court declines to

continue to exercise supplemental jurisdiction over Plaintiffs' and Defendant Byesville's

state law causes of action. 28 U.S.C. § 1367(c). Accordingly, Plaintiffs' claims for

tortious interference with business relationship, conversion, breach of contract, and

unjust enrichment are dismissed; and Defendant Byesville's counterclaim for breach of

fiduciary duty; breach of duty of good faith and fair dealing; fraud; trespass and

conversion; negligent misrepresentation; and claim for "Dan Speedy's personal liability"

are dismissed.

Therefore, based on the foregoing:

1. Plaintiffs Motion to Strike Defendants' Response in Support of their Motion for Summary Judgment (Doc. 102) is DENIED.

2. Defendant Village of Byesville and Donald Gadd's Motion for Summary Judgment (Doc. 75) is GRANTED as to Plaintiff's Constitutional claims; and therefore Counts I, II, and III of the Amended Complaint are dismissed with prejudice.

3. The Court declines to continue to exercise supplemental jurisdiction over the remaining state law causes of action, and therefore these claims are hereby DISMISSED without prejudice.

4.      This matter shall be closed and stricken from the docket of this Court.

**IT IS SO ORDERED.**

                                              _____/s/ Michael H. Watson_____
                                              Michael H. Watson, Judge
                                              United States District Court